## Case No. 16,764.

UNITED STATES v. WORKMAN et al.

District Court, D. Louisiana.  March 6, 1807.

CONTINUANCE FOR ABSENT WITNESS—ANIMUS OF PROSECUTION — EVIDENCE — DECLARATIONS OF CO-CONSPIRATOR — DISCHARGE OF JURY — EFFECT.

[1. It is proper to allow a continuance to obtain the testimony of a material witness, who is a resident of the territory, and who, though in a foreign jurisdiction, has declared that he will return in 15 days.]

[2. On a prosecution for setting on foot an invasion of Spanish territory, in violation of the act of 1794, it appearing that defendant had acknowledged that a certain person was associated with him in a plan for such invasion, statements by such person were admissible to show the extent of the plan, and whether it was legal.]

[3. On such a prosecution it was proper to introduce evidence that, a short time before defendant's arrest, he had been instrumental in instituting habeas corpus proceedings to release one imprisoned by the United States military authorities, with the object of showing that the prosecution arose from the animosity of such authorities, engendered by this conduct on his part.]

[4. The court is at liberty, in all cases not capital, to discharge the jury when it is apparent that they cannot agree, and it may then order another jury to be summoned.]

Trials of Hon. James Workman and Col. Lewis Kerr on a charge of joint misdemeanor in planning and setting on foot within the United States an expedition for the conquest and emancipation of Mexico, a colony and possession of the kingdom of Spain, in violation of Act Cong. June 5, 1794, § 5 [1 Stat. 384], prohibiting the setting on foot of a military expedition or enterprise within the territory or jurisdiction of the United States to be carried on against the territory or dominions of any foreign prince or state with whom the United States are at peace. The defendants having pleaded not guilty to the indictment, the attorney for the district moved on February 9th, 1807, for a postponement on account of the absence of a material witness, M. Brognier De Clouet, who had been summoned, but who had declared that he was a Spanish officer, and could not attend, owing to his absence at Baton Rouge on public service. The prosecution made affidavit as to the materiality of the testimony of the absent witness, and that it hoped before the next term to procure his attendance. It appeared that he was a militia officer under the Spanish government, but was a resident of the district, and that he had declared that he would return from Baton Rouge in fifteen days. After considerable discussion by the opposing counsel as to the propriety of a postponement in such a case, the defense citing the Case of D'Eon, 3 Burrows, 1513, the court stated that the affidavit being in the usual form, and the residence of the witness and his declaration that he would return in fifteen days being circumstances that did not occur in the Case of D'Eon, the trial should be postponed for fifteen days.

The prosecution having admitted that the evidence of M. De Clouet did not affect Mr. Kerr, his counsel moved that the trial of the latter should be brought on. This was opposed by the attorney general, who urged that the offenses charged were joint, and that hence the defendants could not sever in their defense, but the court ordered the trial of Mr. Kerr to proceed. A jury having been sworn, and the district attorney having opened for the prosecution, Lieut. Francis W. Small was introduced as a witness for the United States. He testified to conversations with Mr. Kerr in which the latter suggested the seizure of certain Spanish possessions, beginning with Baton Rouge. He testified further that he was led by the statements of Mr. Kerr to think that such a plan would be sanctioned by the United States government, and that there was no suggestion of undertaking it without such sanction. A further question asked of him, as to whether Mr. Workman told him anything respecting an attempt to invade the Spanish dominions, was objected to by the defense, unless the statements by Mr. Workman were in the hearing of the defendant Mr. Kerr. After extended argument by counsel, the court ruled that the question was proper to show the extent of the plan, but no further; it having been proved that Mr. Kerr acknowledged that Mr. Workman was associated with him in a plan for the invasion of the Spanish territories, and the evidence being proper to show whether this plan was legal or not. The witness then testified to some conversation with Judge Workman in regard to the enterprise, and stated that the latter had suggested that the banks might be seized to procure money for the expedition, but that this suggestion was made in a humorous manner, and that he did not think that it was meant to be taken seriously. Lieut. W. M. Murray also testified to conversations with Messrs. Workman and Kerr in

regard to an expedition into the Spanish dominions, stating that there was little secrecy about it, and that there was no suggestion that the plan was unlawful until the designs of Col. Burr began to be made the subject of conversation. Mr. Brown was then introduced as a witness, and asked to relate what he knew as to the plans of the Mexican Society, and he testified to conversations with Judge Workman as to the proposed expedition to Mexico and the proper methods of getting the sanction of the United States government. The defense then proposed to introduce a witness to prove that a short time before Mr. Kerr's arrest he had, as a magistrate, taken proof of the imprisonment of Mr. Ogden under the orders of General Wilkinson, and that as an attorney he had sued out a writ of habeas corpus on which Mr. Ogden was liberated by the other defendant Judge Workman, connecting this proof with other testimony by which it would appear that defendants were confined by the military authorities at the quarters of the general in command, and that they were freed only by the interposition of the judge presiding at this trial, and that the affidavits on which the prosecution was founded were taken at headquarters, and that the prisoners were sent from such quarters under the conduct of an officer. the object being to show that the prosecution arose from the animosity of the military authorities at the interference of defendants in their summary proceedings. After extended discussion by counsel, the court decided that the witness should be examined, and Mr. Lawrence Clark then testified to the institution of a habeas corpus proceeding by him for the release of Mr. Ogden and the part taken by Mr. Kerr and Judge Workman in such release. The presiding judge then said that it was perhaps proper that he should inform the jury that Mr. Kerr and Judge Workman had both been arrested by the military force, and that they had been liberated in consequence of a habeas corpus which he himself had issued, that after they had been surrendered to the civil authorities by the general Mr. Small and Mr. Murray made in his presence the affidavits on which the prosecution was based, and that he delivered those affidavits to the attorney for the district, who had then commenced the prosecution. The judge added that he had also furnished to the district attorney the exculpatory affidavits made before him by the defendants. The defense then introduced a number of witnesses to testify to the objects of the Mexican association, so called, from which it appeared that it was merely an agreement between a number of men as to measures to be taken for the defense of the district, and to aid the United States in case war should arise with Spain, and to endeavor by all lawful means to accomplish the emancipation of Mexico.

[The evidence for the defendant having been closed, the counsel for the parties addressed the jury at great length. The arguments took a wide range, embracing much matter concerning the condition of public affairs in the territory, the conduct of Gen. Wilkinson, and the relations of the United States to Spain at the time of the commission of the alleged unlawful acts. Mr. Livingston and Mr. Jones, being both unable, on account of illness, to attend, Mr. Kerr addressed the jury in his own behalf; and his co-defendant, Mr. Workman, also, by permission of the court, made an extended argument for the defense.]

HALL, District Judge, then charged the jury. He said he would state the law to the jury, and it would be their province to apply the evidence. The act on which the indictment was founded was one which had been provided by the wisdom of a Washington and a Jefferson at the time when M. Genet was issuing commissions to privateers, raising armies and appointing officers to commence an attack against a friendly nation. By this act it was declared highly criminal for any person or any body of individuals to prepare or set on foot a military expedition against any power at peace with the United States. The means for an expedition might be prepared by enlisting men, or by inducing others to enlist them. In support of the prosecution, it was urged that men had been enlisted by the defendant. Mr. Small stated that he took an oath of secrecy, and an oath to forward the plan; and at the defendant's desire it appeared he had engaged other persons. This seemed very like beginning or setting on foot an expedition. As to the testimony relative to providing means from the banks, he thought, and it was admitted on all hands, that no stress whatever ought to be laid on it. The witnesses did not appear to believe that what was said on this subject was serious. With respect to the Mexican association which the jury had heard so much applauded, he did not think its members ought to boast of it. He disapproved of all such societies. The government of our country was sufficiently strong, vigilant, and careful of the national security and honor. It was the duty of a good citizen to keep pace with, and not attempt to outstrip the government in its operations.

The jury then retired; after having been together three days, they were sent for, called over and asked if they had agreed on a verdict to which they answered in the negative. They added that there did not appear any probability or in the opinion of some of them, any possibility of their ever agreeing.

THE COURT desired the traverser to say whether he would consent to discharge the jury. The traverser observed that he knew of no claim which the prosecution had on him for favors, and did not feel himself under any obligation to the prosecutors to give them any facilities in their proceedings. Those who commenced the prosecution had done so

without his consent, and must proceed without it. He declined giving any consent for the discharge of the jury. The court discharged the jury.

At a subsequent session of the court the traverser moved that his recognizance be discharged, as he could not be again put on his trial for the same offence. The attorney for the United States opposed the motion. He cited several cases to show that. however the law might be in this respect in capital cases or where life or limb is jeopardized, all other cases, according to the latest doctrines on the subject, are to be governed by their own circumstances; and where it is necessary to justice, either to the state or to the accused that a new jury should be empannelled. the court could not refuse one. The traverser replied that the only distinction between capital cases and those of other high offences, is that in the latter a new jury might be empannelled when a former one had been discharged by the consent of the traverser or with a view to favor him; but that in capital cases even the prisoner's consent could not authorize the discharge of the jury. He cited several cases in which a second jury had been empannelled, but in all of which the reason was given that the former one had been discharged at the request or as an indulgence to the defendant; to let him in to plead to the jurisdiction or the like.

THE COURT was of opinion that the general doctrine prohibiting the discharge of a jury in all cases was erroneous and obsolete. The doctrine is now confined to capital cases, and not without exceptions even there. In all other cases it is clear that the court may, when it is necessary to justice, discharge a jury. It was necessary to justice in this case; it is plain the first jury never could have agreed; they have been discharged; and it is now necessary that another be summoned. A venire de novo was ordered returnable on the second of March.

The second trial of Mr. Kerr began Monday, Mar. 2. The jury being sworn, Lieut. Small and Lieut. Murray testified substantially the same as on the first trial. Mons. Brognier De Clouet was next called. He said that Judge Workman had often spoken to him concerning the propriety of rendering Mexico an independent state. Mr. Workman seemed to consider a war with Spain as inevitable. In that case he said the government of the United States would authorize an expedition to Mexico, and the army would aid in it. Some time subsequent to the late disturbances here, Mr. Workman told the witness that General Wilkinson had sworn his (Workman's) ruin; but that he had many friends, and he knew how to support himself and his friends too. Mr. Workman told the witness that if an expedition to Mexico should take place, the witness might probably have a command in it.

For the defendant the evidence was, in general, similar to that given on the previous trial.

Several gentlemen of the jury having expressed to the court their wish to be permitted to retire immediately, in order to consult on their verdict, and declaring that as they had heard the former discussion their opinions could not be altered by the debates from the bar, the counsel on both sides agreed to submit the cause to the jury without argument. The jury then retired and immediately brought in their verdict. "Not guilty."

Friday, Mar. 6.

Trial of Mr. Workman. The jury being called and sworn. Mr. Brown, opened the cause, and explained the nature of the charge against the traverser. In support of the prosecution, Lieuts. Small and Murray and Mr. Brognier De Clouet were examined, and gave the same testimony as in the preceding trial. Mons. Garricke, commandant of the Terre aux Bœufs settlement, was the next witness produced by the prosecutor. He deposed that some time in April last, he dined in company with Mr. Workman and Dr. Watkins at Mr. Gurley's, and that in the evening when they had returned, Mr. Workman asked the witness how he would like to have a military command, and spoke of an approaching Spanish war and an expedition to Mexico, and also asked if the witness could not get a number of the young men at Terre aux Bœufs to volunteer in such an expedition. The witness also stated that Mr. Workman desired him not to mention this conversation, which he promised not to do.

The case on the part of the prosecution being closed, the traverser left it to the jury, without offering any testimony or argument in his defence. The jury then retired, and immediately brought in their verdict, "Not guilty."